All right, this case is Cornerstone Staffing Solutions v. Weber Shapiro and Company, LLP, number 19-3977. Mr. Allen, did you reserve time for rebuttal? I would like to. Would you like to? Yes, Your Honor, I would like to reserve three minutes for rebuttal, please. Very good. That's fine. You may proceed. Thank you, Your Honor, and may it please this Court, my name is Thomas Allen and I represent the appellant Cornerstone Staffing Solutions, Incorporated. The principal issue in this case is whether the New Jersey Affidavit of Merit statute applies to Cornerstone's fraud claims against the defendant's account. Now, these are claims that the defendant's account might raise impacts of buying and concealment, primarily to induce Cornerstone to buy a business unit of Valtech Services. These are not... Excuse me, let me ask you this. To succeed on your fraud claims, why don't you have to prove that there's a violation of accounting principles here? And how do we do that without expert testimony? Your Honor, we can, we will, can prove that case by simply documents and lay testimony. The... That wasn't Judge Sirica's question. It was, don't you have to prove a deviation from a standard of care? Your Honor, no, we do not. As, and we must remember that this is all, the application of the statute is viewed through the Corey, New Jersey Supreme Court's functional test. What is the crux of the allegation? What is the crux of the claim? Here, this is a case about creating two separate sets of books. Yeah, you say that, Mr. Allen, but your allegations include the following, that they overstated revenue and understated expenses and formed the basis for a flawed IPA calculation. Had the expenses been properly accounted for in monthly income statements, gives rise to serious questions about their accounting principles. And later, paragraph 32, rather than correct these gross accounting errors, how are you going to show that they made errors from an accounting standpoint, that they overstated revenue, understated expenses, without saying what they should have done to prove how these were gross accounting errors? I don't see how you can get there. Well, Your Honor, I would say a couple of things about the complaint. Initially, the complaint was alleged, of course, to, was drafted to allege both fraud and negligence. The claims have been narrowed since then. The crux of our- The claims may have been narrowed, but these are factual, these are verments as to a set of facts, not as to legal principles. Absolutely, Your Honor. I don't believe we have to, we will necessarily have to prove all of those factual allegations in order to prevail on our claims, however. And that gets back to the crux of our complaint, really. Because this is really about two sets of books that the defendants knowingly and deliberately created. They controlled, during the initial transaction, which is really where all this started, they controlled the flow of information that we received to review during due diligence. We asked for their financials, that's what they gave us. We relied on that and the universe of information we needed to make our business decision. There was another set of books showing a vastly different picture about the health of this entity. And our CEO would testify that had he seen both of those books in the data room at the same time, we would not have bought the business unit. So we don't have to calculate what the EBITDA was. It's the discrepancy itself. It's the side by side comparison. But isn't it necessarily going to be, you say two sets of books and they say the difference between 617,000 positive and a minus 304,000 was certain intercompany expenses, which under GAP you don't have to show, certain things there. You're saying they're overstating revenue and understating expenses. Aren't these things that are going to be guided and determined by principles of accounting, not just, oh, you know, we had, you know, another set of books like people do. You know, I had a situation on Jewelers Row where they had literally had two sets of books for tax purposes. I can't believe that these sophisticated people, that all it is, is two sets of books that are, you know, totally fraudulent. You've averred yourself. It's not just of two sets of books. You've averred their accounting irregularities here, haven't you? Your Honor, yes, those are part of the language that is contained in the complaint. But our position is we don't have to prove every factual statement, you know, when the complaint was drafted at the outset of the lawsuit. Certainly not for purposes of the Affidavit of Merit statute, which is simply a threshold determination. We don't have to prove and we certainly don't have to ask the jury to calculate what the EBITDA was. And this, I would, I would submit, doesn't go to the gap. It goes to the materiality of the materiality. We asked. That's what, that's what I was going to ask you about. I was going to ask you about materiality, because how can you prove whether something's material or not without the help of expert testimony? I, I have, I'm not an accountant, but in reading the briefs, I, I couldn't tell you exactly what was material and what wasn't. Well, Your Honor, I'm not an accountant, but I don't think you need an accountant. I'm sorry. I don't think we need an accountant's testimony to explain that the materiality isn't measured by compliance with GAAP or GAAS. And that's where this case is really different from this, this court's opinions in Nuveen. Here, this is a determination. We would, we would submit evidence that the importance of the discrepancy between the two profitability figures bore directly on our business-making decision, that they concealed information from us that hampered our ability to make this determination about whether to buy a business unit or not. If we had known that there was a second set of books showing a vastly different figure for profitability, we would have made a different decision. That's fraud. Our, you know, these are bedrock fraud principles that if you are making an incomplete statement and you create a false impression, your obligation, your obligation and the nature of your misrepresentation, that stems from tort principles, not from GAAP. And that goes to really one of, I believe, the deficiencies in the defendant's position that throughout this entire case, they have said, and the district court agreed, that we would need to prevail on a particular GAAP standard in order to, we need to show that they diverge from a particular GAAP standard in order to prevail on our cases. But which standard is that? Is it that you should not commit fraud? Is it that you should not keep a separate set of books that we allege are false? It's not, the inquiry is not how they became false, even though we do offer an explanation of that in the complaint. The inquiry, the essential proof, which is what Corey asks for, is this essential proof that you can't prevail on without? Is the essential proof that the jury must be able to calculate EBITDA? We submit no. It's not the calculation of EBITDA, it's not how they did it, it's that they concealed the whole picture from us. Well, it has to be how they did it, because that's what they're going to contend, that they did it for this purpose, and that's allowed to do it for this purpose. And then perhaps it was after acquired information, which then they can add into the later calculation. I mean, it's not going to just, I mean, you say it's two sets of books. But as you fast forward and imagine what the trial is going to be like, they're going to have a contention as to why there were different figures. And there's reasons for why, you know, unless, you know, they give up and say, OK, we had two sets of books. But those reasons for why, presumably, are based upon certain principles that they were applying. And obviously, if it isn't based on that, then you're going to succeed. But I can't imagine they're not going to put up a defense based on that. They would put up a defense. There is nothing, I would assume, there is nothing precluding them from calling an expert and to opine on these very issues. And I think there would be nothing that would prevent us from them offering an expert in response. But in making our affirmative... Doesn't that mean, therefore, doesn't that mean, therefore, that in order to prove your case, the standard of care is essential to the proof of the case? I don't believe so, Your Honor, simply because we might have to anticipate one of their defenses doesn't mean that that's essential for us to make our affirmative case. Again, when we sort of look into the future of what the trial might be like, we submit that the quantum of proof and the nature of the trial would be very straightforward. This isn't simply a case of trying to get into the mechanics of how they did it. It is the fact that there were two sets of documents, one showing the company was in the red, one showing that the company was in the black. They showed us one. They concealed the other. And if we had had both during that period, we would have made a different decision. Now, you lost the fraud case in Texas, correct? Yes, ma'am. And that was affirmed on appeal? The judgment was affirmed on appeal. Yes. Were there allegations there, the same allegations here? Well, there weren't allegations against the accountants. The accountants were not parties or defendants to the, in the Texas case. But there was there was a fraud claim. Yes, there was a fraud claim. Was it on the same basis that the evidence was wrong and the intercompany expenses were understated? Is that part of the case? I believe the allegations were essentially that we were fraudulently induced to enter into the transaction. Now, we recognize that the Court of Appeals opinion was issued and did affirm. We would submit that while the court, of course, may take judicial notice of that, it is not, it doesn't bear on the issues before this court.  The impact, if any, of that opinion would be taken up, presumably on remand before the district court. The Court of Appeals opinion does not moot this appeal or otherwise impact the court's determination. And there may be further avenues of review in Texas at this point. So, I think I only have a little bit of time left. And you say something about Nuveen. You seem to think that the New Jersey Supreme Court has undermined Nuveen, too. Well, Your Honor, I would, I'd like to be crystal clear. We are not asking the court to overrule Nuveen in any way. As we say in our reply brief, Nuveen is consistent with New Jersey law. It's just a very different case. Applied here, we submit that Nuveen supports reversal, not affirm. The crux of the claims in Nuveen was that the only reason the accountants did what they did, created the documents the way they did, was because they violated GAAP. If you look at the complaint, it is, quotes, GAAP, GAAS, and the like. If they had followed those standards, they would have known better. Here, our case is nothing like Nuveen. There is no suggestion that the defendants would have known better or done something differently if only they had complied with GAAP or GAAS or the like. I see my time is up. I would be happy to take any other questions. Otherwise, I'll return for rebuttal. All right, hearing none, we'll hear you on rebuttal. Thank you, Mr. Allen. Let's hear from Mr. Orloff. Thank you, Your Honor. May it please the court, I'm Lawrence B. Orloff. We represent the defendants, Weber Shapiro and Company, LLP, and Scott D. Shapiro. Your Honors, it should be helpful here to go back to the case law that explains the reason for the Affidavit of Merit statute in New Jersey, which has obviously been the subject of a lot of litigation over a number of years now. And this AOM statute was passed according to the case law in order to allow some sort of independent verification to take place at or near the beginning of a case alleging malpractice or wrongful conduct by a professional in their professional capacity. And the idea of taking a close look to make sure that the case is meritorious really comes home in this particular case, and while this isn't the issue before your honors, it bears noting, as came out in the colloquy with my adversary, bears noting that this is an effort by the plaintiff to get a second bite at the apple after losing in Texas on exactly, or almost exactly, the same kinds of fraud claims that they're now trying to bring against the accountant, who by the way, was a- But that's not before us. That's something that presumably you would go back and could litigate collateral estoppel before the district court. Yes, that's true, your honor, and that only comes up in connection with the alleged estoppel latches argument that wasn't part of my adversary's argument today. Actually, a motion was made by my co-counsel, which was the only counsel in the case at the time in which they tried to raise that. It was denied without prejudice, but we are here on the AOM statute. So, aside from the portions of the complaint in this case that you cited, Judge Rendell, I want to just direct your honor's attentions to various paragraphs along the way, starting with paragraph one of their complaint, which talks about false and misleading statements. Paragraph two, which claims that EBITDA, E-B-I-T-D-A, was artificially inflated. And on it goes to paragraph 16 and 15 and 23 and 25, all of which talks about income statements, unaudited fraudulent financial data, accounting irregularities, giving rise to serious questions about the seller of this business's accounting practice, which was allegedly overseen by my clients in this case. Mr. Orloff, your brief didn't really go into this, didn't highlight parts of the complaint, as I recall. I believe our brief may not have done it, your honor, but Judge Wiginton, in her opinion, did so at great length, and she did so at the beginning of the opinion, and she did so in her conclusion at page seven of her opinion, which would be P7A of the appendix. Now, the other thing I'm curious about, and maybe it's a strategic point on your part, but 617,000 positive versus negative 304, negative 286, I would have assumed that you would have made some offer, and maybe it's premature, as to, or some argument that these things are different because, at least in part, based upon standards and based upon how accounts are supposed to treat different information. I mean, maybe that's not the place for this, and that's not before us, but it would seem to me a matter of common sense. Well, I would agree that it's a matter of common sense, your honor, and it didn't seem to us that that was part of the record that should pertain on this particular motion, but given the clear conclusion that I would ask your honors to draw from these pleadings, and even from the oral argument that's been conducted with my adversary this morning, it seems pretty, it seems to me that one cannot reasonably dispute that in order to prove its case that they have to show proof of a deviation from standards of care and standards of behavior that govern the accounting profession, and whether or not, unlike in Duveen 2, they laid out in this complaint what those standards are, it's really not our job as defendants at this point, at this stage of the case, to lay that out. It's up to the plaintiff to indicate what standards apply, but there are obviously standards in GAP and GAS, there is a code of conduct that governs all AICPA members, all of these standards and directions and regulations would apply here and would have to be discussed in order for the plaintiff to be able to prove its case in this situation. Are you in a position to tell us what fraud allegations here result from the defendant's failure to comply with GAS and GAP? I think all of them do, not necessarily GAS and GAP as such, but all of them do in the sense that one of the standards that's contained in these regulations is that the accountants be candid, open, clear, that they not mislead at all, that they not withhold information that would bear upon the information they're providing, and all of those standards are found in GAS and they're found in the code of conduct that governs AICPA members, which is applicable here. Again, your honor, the nature of the conduct that's alleged here would have to involve proof of violation of standards. Mr. Orloff, why would an expert be required to determine that a misrepresentation was made when Shapiro allegedly lied about the existence of the balance sheet showing that services operated at a loss? You don't need to be an accountant to understand whether that was true or not, right? That may be true, your honor, but that would not prove the case. Part of the problem here is there's an oversimplification on the part of the plaintiff of what he would have to prove, and obviously the claim that Shapiro misrepresented is not admitted, but he would have to prove not just a duty to tell the truth, which I'm sure one would find in the standards, but again, the materiality of the supposed lie or misstatement would be essential to proving the case against the accountant. Just alleging that somebody lied about something doesn't give you a judgment. You've got to show a lot of other things, and in the case of a complex accounting situation, you've got to show A, it was material, and B, how it damaged the party who claims that they reacted to the so-called misstatement. That's all part of the whole picture in this case, and it couldn't be clearer, we say, that all of the claims here involve and implicate the defendant's performance of their duties as standards. I should also point out in this case, in the fifth count of the complaint, and I concede to your honors that that's the count they've now dropped, they're not pursuing as a result of the motion that we made. The fifth count is the professional negligence count, and this plaintiff itself alleges in that count that the defendants did not act in accordance with applicable professional standards. But they dropped that count. I understand they dropped it, your honor. My point is they recognize in pleading it to begin with that there are standards that govern the conduct that they're alleging, misconduct they're alleging took place here. Why would an expert be required? Couldn't a layperson conclude that a reasonable purchaser would want to know that the balance sheet states that the current liability of $3.4 million exceeded total assets of $3.1 million for the 11 months ending on November 30, 2015? That doesn't seem like you need an accountant or an expert to tell you that. A reasonable buyer would want to know that the company was operating at a loss, right? The issue, your honor, the question in the abstract would lead me to have to say yes, but we can't deal with it in the abstract, I would respectfully submit. We have to know what the context was in which these numbers were being created and presented to the buyer. And there are explanations, and there would be explanations. And therefore, it's not simply to this one said this, and this one says that. You've got to look at the context in which they were dealing, keeping in mind that my clients were accountants or the seller, and they were dealing with the buyer. So they were producing information sought by the buyer, and they were dealing with the buyer. And therefore, you can't really answer that question in order to give the plaintiff any kind of a chance at getting a judgment in this case. Your honors, unless you have any questions of me, I would rest on our brief on the other arguments that were made by the plaintiff on this appeal involving the common knowledge exception. This case, in our view, clearly would not be subject to that exception. And given the procedural history of the case, the latches estoppel argument would fail, we rest on our brief. There was almost nothing going on in this case that could any way be claimed by the plaintiff to prejudice themselves in terms of the short delay before this motion was filed. So unless your honors have any more questions of me, that's all I would have. I just have one. I want to make sure I understand the crux of your argument, Mr. Orloff. As I hear you, when you say in the abstract something might look amiss, or there might appear to be, quote, two sets of books, to use the plaintiff's phrase, your position is that that's just the beginning of the case. Then what happens is your client has a right to explain why what might appear to be amiss actually isn't amiss because this is the way accountants do things when they create documents for different purposes for different people. Is that your position? Yes. All right. And once you get into that realm, all kinds of expert testimony is required to figure out what the accountant's intent, duty, et cetera, are, and all that goes to materiality as well. That's correct, your honor. And it's one of the reasons why obviously looking at the claims in this case, the idea that a jury could on its own come up with a reasonable resolution without expert testimony is absurd. Any other questions from Judge Sherriff? I'm assuming if we would reverse this and send it back, that you would pursue your collateral estoppel claim in the district court. We would, your honor, but we hope we don't have to. Judge Sherriff, anything further? All right. Thank you, Mr. Orloff. Let's hear Mr. Allen's rebuttal, please. Thank you, your honor. Mr. Allen, could I ask you to start where we finished with Mr. Orloff following up on my question? He sort of conceded, at least in the abstract, to use his word, that there are different books or two sets of books or what have you, but why isn't that just a starting point in this case? Isn't it clear that they're entitled to explain themselves as to why what might appear at first blush to be amiss is actually standard operating procedure in the accountancy profession? Yes, your honor, I'd be happy to, and I believe he actually made a number of concessions during his argument. That is one. Let's remember what the purpose of the Affidavit of Merit statute is. It is a preliminary threshold gatekeeping function to weed out meritless malpractice claims before a lawsuit gets very far down the road. It is not intended to narrow or dictate the way a case will be developed or tried. Here, all we have to show, we make a, based on the gist of our complaint, we can demonstrate that that's the proof we will muster. The Affidavit of Merit statute isn't about whether we win. It's about what we would have to show, and maybe in a jury, maybe a jury believes you, maybe it doesn't. That's not what the Affidavit of Merit statute is designed to limit. And it was telling that in his answers, opposing counsel said that it wasn't really gap as such, and instead shifted to codes of conduct for accountants, which they're subject to like lawyers and many other licensed professionals. The Corey opinion actually makes it crystal clear that that is not enough. Now, the Stoker case. I'm not sure, I'm not sure you, I was just going to say, I'm not sure you, anything you just said, was it all responsive to my question? I apologize, Your Honor. I, I, what the point I was trying to make is that the, the Affidavit of Merit statute is intended to, as I said, create a gatekeeping function. It, I don't believe there's, it dictates whether we have to anticipate every defense, or whether we are excluded from offering any sort of evidence, even a rebuttal to theirs, if they choose to raise a defense or not. But the point is, but the point is under Judge Hardiman's scenario, which is probably what's going to play out here, and then we look at Corey and say, okay, are you, in order to succeed in your case, are you going to have to prove a deviation from a standard of care? And as we see it play out, I think the point is, you probably, you are going to have to prove that. Whether the standard of care is one of openness, or whether the standard of care is, you know, the way you account for intercompany expenses, you're going to, you're going to have to prove that in order to succeed, are you not? As it plays out, you're not just going to go say, okay, two sets of books, jury decide in our favor. That's not what's going to happen here, is it? Well, that's the, that's the case that we think we would, we would present and would be persuasive. And, and it also bears repeating, as Judge Hardiman pointed out, this isn't just about the two books. This is also about allegations in the complaints, such as Paragraph 17, where we asked Mr. Shapiro, point blank, do you have balance sheets for this entity? He said, no, we allege that is false. There is no gap or gas standard that applies to that statement. To the degree it might implicate ethical rules, Corey and Stoker, and other cases, but those two in particular, make clear that's not enough. In Corey, the psychiatrist disclosed a patient's confidences. That case sounded in breach of contract. Now it was the Supreme Court noted that it might also implicate other professional standards, but that wasn't essential to prove. So here, we don't have to prove that they violated their codes of conduct in order to prevail at trial. And finally, I do think that with materiality, a reasonable buyer absolutely can present evidence that I'm a CEO, I've done X number of deals, and we always look at these, these values. If I had known there were, there were two values out there, one on a separate set of books that were hidden from me the entire time, I would have made a different business decision. You don't have to be an accountant to make that judgment. So for those, I see my time is up. If the court has no other questions for me, I'd be happy to answer any others. All right. Hearing none. Thank you very much, Mr. Allen. Thank you, Mr. Orloff, for the excellent arguments. We will take the matter under advisement.